This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Cleveland Neighborhood Builders, Inc. and the Gross Family Limited Partnership appeal from the decision of the Summit County Court of Common Pleas, which affirmed Akron City Council's decision denying their conditional use application. This court affirms.
 I.
In the 1990's Cleveland Neighborhood Builders, Inc. (hereinafter "CNB") secured an option to purchase a parcel of land (hereinafter "the parcel") from the Gross Family Limited Partnership. The parcel consists of approximately eleven acres of land located just east of White Pond Drive in Akron, near Interstate 77. In the early 1970's, a mid-rise apartment for senior citizens was constructed on adjacent land to the west of the parcel. At that time, the parcel at issue here was also zoned for the same high-density use, but the property was never developed. Over the course of years, the zoning of the parcel was changed back to single family residential homes, with a density of four units per acre. In 1998 CNB, a developer of condominiums and cluster homes, drew up plans for the development of 120 single family cluster homes. CNB and the Gross Family Limited Partnership (hereinafter collectively referred to as "the appellants ") presented the plans to Akron City Council's Planning Commission to obtain a conditional use permit.
CNB's initial plan called for the use of Parkgate Avenue, a private street currently used and maintained by only four families and one business on that street. The parcel apparently included an easement to use Parkgate Avenue. Other possible means of egress included Logan Drive and Auten Drive, just north of the parcel, and access across an adjacent property also owned by CNB, a 230-unit apartment complex south of the parcel. The plan called for the use of Parkgate Avenue to the exclusion of the other routes. The use of Parkgate Avenue would require widening Parkgate, adding sidewalks, and upgrading the road. CNB estimated that after the property was developed 600 round-trips would be made across Parkgate from the new development.[1]
On February 26, 1999, the appellants and residents from the area attended a planning commission meeting to discuss the proposed development. The planning commission was initially receptive, but residents in the neighborhood were vocal in their opposition to the planned development. By this time, CNB had reduced the number of units from 120 to 104 units, resulting in a density of 9.8 units per acre. The neighbors expressed concern about the number of people and cars utilizing the small area. The neighbors also expressed concern that the cluster homes may ultimately house a number of children, who would have very little yard area in which to play. They were also concerned that the most likely route of ingress would require widening Parkgate Avenue to three lanes, depriving some residents of considerable portions of their frontage and removing fourteen parking spaces from the senior citizens' parking lot.
One of the most serious concerns was the traffic problem that would ensue when people exiting the development on Parkgate attempted to turn left onto White Pond Drive to access the freeway. This traffic scenario would cause long delays for residents attempting to cross White Pond against traffic. The current residents on Parkgate Avenue would be especially affected during rush hours. This route also would likely increase traffic accidents at the intersection, which did not have a traffic light. The neighbors queried why CNB refused to provide access over its own apartment property that fronted on Mull Drive. Using this route, the primary flow of traffic to Interstate 77 would turn right onto Mull Drive, then proceed up to the traffic light for a left turn leading to the interstate. The neighbors believed this route would provide for easier and safer traffic flow.
In response to the neighbors' concerns, CNB promised to provide larger set-backs for the cluster homes and to improve and maintain Parkgate Avenue. CNB was not willing to consider traversing its own property in the adjoining apartment complex to access the proposed development.
The planning commission continued the discussion to further investigate the anticipated traffic usage, the appellants' legal right to widen Parkgate, and the possibility of using an alternate route of egress. The planning commission again met on April 19, 1999, just prior to a city council meeting on the matter. Again, the opponents of the development questioned CNB's legal right to expand Parkgate Avenue and the estimate of the increase in traffic. Several neighbors stated that they would more than welcome thirty to forty single family residences consistent with the current character of the neighborhood. However, they objected to the density of the proposed development.
Prior to the city council meeting on April 19, 2001, the neighbors filed petitions with city council, pursuant to Section 34a of the Akron City Charter. Section 34a provides that if 51% of the electors in a precinct surrounding the subject area sign a petition opposing a conditional use permit, city council must approve the conditional use by a supermajority vote of three-quarters of the council members. At the city council meeting the neighbors reiterated their concerns. Because the signatures on the petitions were still being validated, the council could not vote on the issue.[2]
The planning commission met again on April 26, May 3, and May 10, 1999. By the second meeting, CNB agreed to reduce the number of units to 94, a density of 8.6 units per acre. This also preserved the parking spaces and the garden area for the senior citizens' building. However, the plan still provided for access to White Pond Drive via Parkgate.
On May 10, 1999, the city council met in regular session and discussed the matter again. A member of the planning commission clarified that the area is zoned for single-family residential use, which would permit approximately 40 to 45 houses for the area to be developed, a density of approximately four units per acre. After further discussion by council members, a vote was taken and the conditional use application was denied by a vote of 7 to 5.
The appellants filed an administrative appeal to the court of common pleas. The appellants also filed an action in declaratory judgment challenging the constitutionality of Section 34a of the Akron City Charter. The two actions were merged. The common pleas court denied the constitutional challenge because the appellants had not demonstrated prejudice, since their application was defeated rather than passing by less than a supermajority. As to council's determination that the conditional use was not appropriate, the common pleas court found that the denial of the conditional use permit was supported by substantial, reliable and probative evidence.
The appellants filed the instant appeal, assigning one error.
 II. THE TRIAL COURT ABUSED ITS DISCRETION AS A MATTER OF LAW, BY AFFIRMING THE DENIAL OF APPELLANTS' CONDITIONAL USE PERMIT BECAUSE THE CITY COUNCIL'S DECISION WAS NOT SUPPORTED BY PROBATIVE RELIABLE AND SUBSTANTIAL EVIDENCE IN THE WHOLE RECORD.
The Supreme Court of Ohio has recently reviewed the standard to be applied to administrative appeals taken pursuant to Chapter 2506 of the Revised Code. Henley v. City of Youngstown Bd. of Zoning Appeals
(2000), 90 Ohio St.3d 142 . In Henley, the Court clarified that
 The common pleas court considers the "whole record," including any new or additional evidence admitted under R.C. 2506.03, and determines whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence.
 The standard of review to be applied by the court of appeals in an R.C. 2506.04 appeal is "more limited in scope. * * * This statute grants a more limited power to the court of appeals to review the judgment of the common pleas court only on `questions of law,' which does not include the same extensive power to weigh `the preponderance of substantial, reliable and probative evidence,' as is granted to the common pleas court. * * * It is incumbent on the trial court to examine the evidence. Such is not the charge of the appellate court. * * * The fact that the court of appeals, or this court, might have arrived at a different conclusion than the administrative agency is immaterial. Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so."
(Internal citations omitted.) Id.at 147.
In the instant case, the common pleas court determined that the Akron City Code 153.077 provides that a conditional use permit may be granted where it is clear that certain enumerated problematic circumstances will not result. Specifically, the code reads:
 The planning staff, the City Planning Commission, and Council, when studying a petition for a conditional use, * * * and if taking favorable action on the proposal, shall find adequate evidence that the use:
 Will be harmonious with and in accordance with the general objectives of the city's Comprehensive Plan;
 Will be designed, constructed, operated, and maintained so as to be harmonious and appropriate in appearance with the existing or intended character of the general vicinity and will not change the essential character of the same area;
 Will not be hazardous or disturbing to existing or future neighboring uses;
 Will be served adequately by essential public facilities such as highways, streets, police and fire protection * * *;
 Will not create excessive additional requirements at public cost for public facilities and services, and will not be detrimental to the economic welfare of the community;
 Will not involve uses, activities, processes, materials, equipment, and conditions of operation that will be detrimental to any person or property or the general welfare by reason of excessive production of traffic, noise, smoke, fumes, glare or odors;
 Will have vehicular approaches to the property which shall be so designed as not to create an interference with traffic on surrounding public streets or roads;
 Will not result in the destruction, loss, or damage of a natural, scenic, or historic feature of major importance.
Akron City Code 153.077.
The common pleas court properly reasoned that where there exists a problem with even one of the enumerated conditions, city council must deny the conditional use application. This court agrees. See Leuchtag v.City of Akron (Apr. 22, 1998), Summit App. No. 18351, unreported, at 9-10. In the instant case, the common pleas court found on the record substantial probative evidence of several conditions warranting a denial of the conditional use permit. There was evidence that the proposed use would result in a significant increase in traffic over Parkgate Avenue, in violation of Code 153.077(G). There was evidence that the left turn onto White Pond Drive against heavy traffic by motorists trying to access the interstate from Parkgate would create a traffic hazard, in violation of Code 153.077(F). It was clear that the density of housing units would more than double from a density of four houses per acre, as provided by code, to a density of more than eight units per acre. Because of the likelihood that children would be living in some of the proposed houses, there was concern that there would not be safe areas for them to play, in violation of Code 153.077(C).
The appellants argue that the concerns of the neighbors constituted mere speculation, not evidence of circumstances that violate the city code. However, the neighbors' concerns were based on the plans submitted by the appellants and the problematic facts, i.e., the increase in traffic, the increase in density of units per acre, and Parkgate's lack of a traffic light, were undisputed.
Consequently, this court cannot conclude that the court of common pleas erred as a matter of law in affirming city council's decision to deny the conditional use application.
The appellants' assignment of error is not well-taken and it is overruled.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Summit, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellants.
Exceptions.
______________________________________ WILLIAM R. BAIRD
SLABY, P.J., WHITMORE, J. CONCUR.
[1] Disputes arose as to the number of "end-trips" involved, i.e., trips out of and back into the development. The estimated number of end-trips varied from 600 to 1,000, depending on the type of occupants of the cluster homes (senior citizens, young singles, young professionals, and/or families with children) and whether the proposed housing units were considered "condominiums" or "single family cluster homes."
[2] It was ultimately determined that the petitions were signed by more than 51% of electors in the affected precinct.